UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JIM AARON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:03-CV-656-RLM |
| | ) |
| MERRILL LYNCH, PIERCE | ) |
| FENNER & SMITH, and | ) |
| SUSAN J. MAHL a/k/a | ) |
| SUSAN J. SCOTT, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This action began (for purposes of today's ruling) with a complaint for replevin that Jim Aaron filed in this court in September 2003. Mr. Aaron was seeking funds in an account held by Merrill Lynch, Pierce, Fenner & Smith. The account was titled in the name of Susan Mahl. Ms. Mahl is now, and indeed was in 2003, known as Susan Scott; the court will refer to her as Susan Scott from this point forward, understanding that the case's backstory involved a time when her name was Mahl.[1] Merrill Lynch filed an interpleader complaint, and the court allowed Merrill Lynch to deposit the funds with the court. The court of appeals affirmed that ruling. Aaron v. Mahl, 550 F.3d 659 (7th Cir. 2008). The case's process in this court was delayed by two lengthy stays to allow appeals, two in the Indiana courts and one in the federal courts. On October 19, 2012, the case came

---

[1] Ms. Mahl changed her name to Susan Scott in 2002. After the passage of a decade or so, it seems she should be called by that name.

before the court for trial. By the day of trial, Mr. Aaron was suing on the judgment he obtained against Ms. Mahl in the circuit court of LaPorte County, Indiana on October 24, 2002.

This court's jurisdiction is based on 28 U.S.C. §§ 1332 and 1335. This opinion is meant to satisfy the court's obligations under Federal Rule of Civil Procedure 52.

Some facts, that have no consequence in determining the matters before the court at trial, may be reviewed at 550 F.3d at 660-662 and Mahl v. Aaron, 809 N.E.2d 953, 955-956 (Ind. Ct. App. 2004). Mr. Aaron and Ms. Scott don't agree as to all of those matters, but the court needn't resolve those disputes for today's decision.[2]

The facts of consequence to the determination of this action are both few and undisputed: On October 24, 2002, the LaPorte Circuit Court granted summary judgment to Mr. Aaron, domesticating a California judgment against Ms. Scott, and entering an Indiana judgment in the amount of $1,122,389.63. That judgment remains unsatisfied. Mr. Aaron is the judgment creditor of the Indiana judgment which totaled, with statutory interest, as of October 19, 2012,

---

[2] At trial, Ms. Scott renewed her argument that the Merrill Lynch account can't be reached in Indiana because the LaPorte Circuit Judge withdrew a writ of execution for the funds on the theory that despite jurisdiction over Merrill Lynch, an Indiana state court had no authority to direct a writ to funds in South Carolina. The federal court of appeals rejected that argument on appeal from the interpleader order, 550 F.3d at 664, so it is the law of the case, not to be reviewed by a district court.

$2,019,054.23. Merrill Lynch deposited a total of $362,097.37 with this court pursuant to the interpleader order.

Some additional background facts, drawn from opinions in this and related litigation between Mr. Aaron and Ms. Scott, will assist in explaining the parties' arguments. The LaPorte Circuit Court judgment was the domestication of a California judgment against Ms. Scott that had been assigned to Mr. Aaron. Mahl v. Aaron, 809 N.E.2d at 956. The LaPorte Circuit Court later learned that during the pendency of that suit and despite that court's "freeze order," Ms. Scott had transferred the funds from the Indiana account in which they had been kept to a Merrill Lynch account in South Carolina where she lived. Mr. Aaron asked the state court for a writ of execution against the funds, but the state court declined, holding that an Indiana state court can't issue a writ of execution against property in South Carolina. Aaron v. Mahl, 550 F.3d at 661-662. Ms. Scott appealed the part of that ruling that held that the funds weren't exempt from execution under Indiana law and lost. Mahl v. Aaron, 809 N.E.2d at 958-959. In still another hearing, the LaPorte Circuit Court reaffirmed its holding that it lacked jurisdiction to attach property in South Carolina, and told Mr. Aaron that "'the attachment of Defendant Scott's personal property should be accomplished through a court in her state of residence or an appropriate federal court.'" Aaron v. Mahl, 550 F.3d at 662. The Indiana Court of Appeals held that had Mr. Aaron intended to challenge that holding, he should have appealed when the holding was made, and

3

not when it was explained. Aaron v. Scott, 851 N.E.2d 309, 313 (Ind. Ct. App. 2006).

The federal court of appeals provided an excellent explanation of interpleader proceedings when this case was before it:

> Interpleader is an equitable procedure used when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims. Interpleader is justified only when the stakeholder has a real and reasonable fear of double liability or conflicting claims. A "real and reasonable fear" does not require the party requesting inter-pleader to show that the claimants might eventually prevail. "Of course, the claims of some interpleaded parties will ultimately be determined to be without merit. That, however, is the very purpose of the proceeding and it would make little sense in terms either of protecting the stakeholder or of doing justice expeditiously to dismiss one possible claimant because another possible claimant asserts the claim of the first is without merit." On the other hand, the adverse claims must meet a "minimal threshold level of substantiality." After a court has determined that interpleader is warranted, the claimants proceed to a second stage in which the merits of their claims are resolved.

550 F.3d at 663 (citations omitted).

Any arguments Ms. Scott might have in this second stage of interpleader about how the LaPorte Circuit Court judgment was obtained lie beyond the confines of this court's authority. Downs v. Westphal, 78 F.3d 1252, 1256 (7th Cir. 1996) ("The *Rooker-Feldman* doctrine makes it clear that the decisions of state courts in civil litigation may not be reviewed by the lower federal courts.").

Ms. Scott is left with two arguments.

First, she says that this case is really execution on the Indiana judgment, and so must comply with Federal Rule of Civil Procedure 69(a), and she says Mr.

4

Aaron's requested relief doesn't comply with Rule 69(a). As this court understands her position, it is based on the portion of Rule 69(a) that provides, "The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." If this court understands her argument correctly, she says Mr. Aaron has found his way into an endless loop of futility: (1) the state court declined to execute on these funds in the belief it couldn't do so when the funds were in South Carolina; (2) Mr. Aaron sued in this federal court because of its greater jurisdictional reach; (3) Rule 69(a) requires this court to apply Indiana law if Mr. Aaron wants to reach the funds; (4) Indiana law says the funds can't be executed upon. And so on.

The court is unpersuaded. The funds are no longer in South Carolina; they are in an account in the name of the clerk of this court.

Second, Ms. Scott argues that allowing Mr. Aaron to reach these funds is essentially unfair. She says this was her retirement account[3] and would have been protected from execution under law of South Carolina, where she lives. It is unfair, she says, for Mr. Aaron to be allowed to reach those funds when, had he sued in

---

[3] No evidence supports that assertion in this case; Ms. Scott made that statement in final argument. The statement is consistent with the issue presented to the Indiana Court of Appeals, <u>Mahl v. Aaron</u>, 809 N.E.2d 953, 958-959 (Ind. Ct. App. 2004), but was still surprising to this court because Ms. Scott's proposed statement of facts, filed one week before this trial, included: "The defendant's mother, Jeanne E. Ginther owned the funds at issue until her death in 2000 and the accounts were then held in the name of Susan Scott (then Mahl), as the beneficiary."

5

South Carolina, he could not have obtained them. Ms. Scott didn't cite, and the court hasn't looked for, South Carolina law to that effect. Testing the accuracy of Ms. Scott's understanding of South Carolina law isn't needed to decide this case, because Ms. Scott already lost that argument in the Indiana Court of Appeals. She argued then that application of Indiana law, when California law would have forbid the funds being taken, violated the Full Faith and Credit Clause of the United States Constitution. The Indiana Court of Appeals rejected that argument, holding that Indiana law applies and doesn't render the funds exempt, even if another state's law would produce a different outcome. Mahl v. Aaron, 809 N.E.2d at 957, 959. There is no reason South Carolina law would fare better than California law under that analysis. Ms. Scott has given the court no basis upon which to review a state court appellate decision in her long-running dispute with Mr. Aaron. *See* Downs v. Westphal, 78 F.3d at 1256.

Under these essentially undisputed material facts, the law favors Mr. Aaron. The court finds for the plaintiff and against defendant Ms. Mahl a/k/a Scott, and orders the clerk of this court to remit to the plaintiff the $362,097.37 paid into the clerk by Merrill Lynch, Pierce, Fenner & Smith, that was reduced by attorney fees of $63,634.88, together with any interest that has accrued while the funds were in the clerk's custody.

SO ORDERED.

ENTERED: October 23, 2012

    /s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court